UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:17-CV-00033-GNS

THE SPORTING TIMES, LLC; andPLAINTIFFS
SPORTING TIMES FRANCHISE, LLC

v.

ORION PICTURES, CORP.;
METRO-GOLDWYN-MAYER STUDIOS INC.;
PODIUM PICTURES, LCC;
RHINO FILMS, LLC; FILMBUFF; and
GUNPOWDER & SKY DISTRIBUTION, LLCDEFENDANTS

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motions to Dismiss (DN 11, 15). The motions have been fully briefed and are ripe for decision. For the reasons stated below, the motions are **GRANTED**.

### I.BACKGROUND

Plaintiffs operate a youth sports publication and hold a registered trademark for their THE SPORTING TIMES mark ("Mark"). (Compl. ¶¶ 13-15, DN 1). The claims in this case relate to Defendants' use of the Mark in conjunction with the release of the movie *Spaceman* in August 2016.[1] (Compl. ¶¶ 17-31). The film is a biopic of professional baseball pitcher Bill

---

[1] Podium Pictures, LLC and Rhino Films, LLC produced the film. (Defs.' Mem. Supp. Mot. Dismiss 2, DN 11-1 [hereinafter Defs.' Mem.]). A subsidiary of Metro-Goldwyn-Mayer Studios Inc. ("MGM") licensed the film for distribution in Latin America, and Orion Pictures Corp.'s ("Orion Pictures") (mistakenly named by Plaintiffs as "Orion Pictures, Inc.") logo appears on a title card in the film, though neither distributed the film in the United States. (Defs.' Mem. 2). Filmbuff was apparently another distributor. (Compl. ¶ 18). Gunpowder & Sky Distribution,

"Spaceman" Lee. (Defs.' Mem. 2). Early in the film, a montage of news stories "provides the audience with an overview of Lee's career and a sense of his quirky persona." (Defs.' Mem. 2). The montage originally included "a nine-second shot of the cover of a fictional magazine entitled *The Sporting Times*, dated July 1976, with the headline 'Boston's Bill "Spaceman" Lee; In an Orbit All His Own' over a photo of Josh Duhamel, the actor who played Lee, in his pitching stance . . . ." (Defs.' Mem. 2; Compl. ¶ 22). Approximately two seconds of the same shot was also included in the original movie trailer, released in the summer of 2016. (Compl. ¶¶ 20-21; Defs.' Mem. 3). Defendants note that the image shown is not an actual copy of Plaintiffs' publication, which did not exist until 2004 and whose Mark was not protected by trademark until its registration in 2008. (Defs.' Mem. 3; Compl. ¶¶ 13-14).

On September 19, 2016, Plaintiffs sent a letter to Orion Pictures and its parent company, MGM, objecting to the film's use of their Mark. (Compl. ¶ 23; Compl. Ex. B, DN 1-2; Defs.' Mem. 3). According to Defendants, they "promptly removed" the Mark from the film and trailer, but Plaintiffs contend the "infringing materials remain publicly available." (Defs.' Mem. 3; Compl. ¶¶ 25-26). Plaintiffs claim the movie "venerates [Lee's] enthusiastic addictions to drugs and alcohol" and strenuously object to the use of their Mark, as viewers might believe their "youth publication promotes and sponsors druggy middle-aged athletes . . . ." (Compl. ¶ 19; Pls.' Resp. Defs.' Mot. Dismiss 2, DN 21 [hereinafter Pls.' Resp.]).

On February 24, 2017, Plaintiffs filed the present suit alleging Defendants' actions constitute trademark infringement, trademark dilution, false designation of origin, passing off, and commercial disparagement under the Lanham Act. (Compl. ¶¶ 32-34, 38-40). Plaintiffs also bring associated state law claims for false and misleading advertising, unauthorized commercial

---

LLC (mistakenly named by Plaintiffs as "Gunpowder & Sky, LLC") is Filmbuff's successor-in-interest, as the two entities apparently merged. (Notice Appearance, DN 14; Compl. ¶¶ 8-9).

use, and commercial disparagement. (Compl. ¶¶ 35-40). Plaintiffs seek compensatory damages in excess of $400,000.00, punitive damages in excess of $1,000,000.00, as well as various forms of equitable relief.[2] (Compl. ¶¶ 41-46). In their motions, Defendants seek to dismiss with prejudice all claims asserted in the Complaint for failure to state a claim upon which relief may be granted. (Defs.' Mot. Dismiss 1, DN 11).

## II. JURISDICTION

The Court has subject matter jurisdiction over this matter pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a). The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

## II. STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 8(a)(2); Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a

---

[2] Plaintiffs ask the Court to restrain and enjoin Defendants from using their Mark in the movie and related trailers, to compel Defendants to destroy and/or recall the offending movie and trailer, to compel Defendants to engage in a program of corrective advertising to dispel any confusion caused by their use of Plaintiffs' Mark, and to tender to Plaintiffs an accounting for any profits made by the Defendants as a result of their actions. (Compl. ¶¶ 43-46).

complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (internal quotation marks omitted) (citation omitted).

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed pursuant to Rule 12(b)(6) if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561-64).

In reviewing a motion to dismiss, the Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted). As the Complaint clearly centers on Defendants' use of Plaintiffs' Mark in the movie and trailer, the Court will consider these works. (Defs.' Mot. Dismiss Ex. A, DN 11-3; Defs.' Mot. Dismiss. Ex. C, DN 11-5). Still-frame representations of Defendants' contested use are as follows:



(From the original trailer) (Defs.' Mem. 3).



(From the original movie montage) (Pls.' Resp. 4).

### III. DISCUSSION

Defendants argue that Plaintiffs have failed to state a claim upon which relief can be granted, noting that "Plaintiffs cannot state a cognizable Lanham Act or state-law claim based on

the fleeting use of their trademark THE SPORTING TIMES in Defendants' motion picture *Spaceman*." (Defs.' Mem. 3).

### A.     Trademark Claims under the Lanham Act

A trademark is "any word, name, symbol, or device . . . used by a person . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127.  Plaintiffs' registered Mark is for the words THE SPORTING TIMES in red letters, outlined in black, in Old English font:



(Compl. Ex. A, DN 1-1; Pls.' Resp. 4).  Plaintiffs' ownership is presumed by registration of the Mark and is not disputed by Defendants.  15 U.S.C. § 1057(b).

#### 1.     *Trademark Infringement and False Designation of Origin*[3]

To assert a claim for trademark infringement, Plaintiffs must allege that: (1) they own the registered trademark; (2) Defendants used the mark in commerce; and (3) the use was likely to cause confusion.  *See* 15 U.S.C. § 1114(1); *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997) (employing the "likelihood of confusion" standard to a federal trademark infringement claim); *Oaklawn Jockey Club, Inc. v. Ky. Downs,*

---

[3] Plaintiffs make additional federal claims for trademark dilution and "passing off." (Compl. ¶ 33).  The claim of trademark dilution is addressed below; however, the claim of "passing off" is subsumed by Plaintiffs' claim of false designation of origin under Section 43(a) of the Lanham Act.  *See Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 646-47 (6th Cir. 1982) (equating "passing off" with "false designation of origin," and considering the claim under the "likelihood of confusion" standard) (citations omitted).  Therefore, the Court will not separately consider Plaintiffs' "passing off" claim.

6

*LLC*, 184 F. Supp. 3d 572, 575 (W.D. Ky. 2016) (citations omitted), *aff'd*, 687 F. App'x 429 (6th Cir. 2017). The question at issue turns on "whether the Defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Big Daddy's*, 109 F.3d at 280. The same likelihood of confusion standard applies to claims of false designation of origin. *Johnson v. Jones*, 149 F.3d 494, 502 (6th Cir. 1998); *see* 15 U.S.C. § 1125(a).

a. **Non-trademark Use**

Defendants first argue that Plaintiffs' trademark infringement and false designation of origin claims fail because Defendants' use of the Mark was a non-trademark use, *i.e.*, "as the masthead of a fictional magazine appearing in a brief montage of media clippings featuring the title character." (Defs.' Mem. 1). Defendants therefore state that "[n]o reasonable consumer who watches either *Spaceman* or its trailer would conclude that *The Sporting Times* sponsored or produced the film." (Defs.' Reply Supp. Mot. Dismiss 3, DN 26 [hereinafter Defs.' Reply]; Defs.' Mem. 5).[4]

The Sixth Circuit's eight-factor likelihood of confusion test does not apply where a defendant uses the mark in a "non-trademark way." *See Interactive Prods. Corp. v. a2z Mobile Office Sols., Inc.*, 326 F.3d 687, 695 (6th Cir. 2003) (citing *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 307 (9th Cir. 1992)); *Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603, 610 (6th Cir. 2009). Specifically, there can be no finding of trademark infringement where the alleged offending party is not "using the challenged mark in a way that identifies the source of their goods." *Interactive*, 326 F.3d at 695. In *Interactive*, for example, the Sixth Circuit

---

[4] Plaintiffs appear to conflate this issue with defenses to trademark infringement actions under the "'Fair Use' and/or 'Nominative Use' Doctrines." (Pls.' Resp. 10-12). As Defendants make clear, however, their non-trademark use defense is distinct from these concepts. (Defs.' Reply 4-6).

concluded that the appearance of the plaintiff's trademarked product name in the post-domain path of the defendant's website would not cause consumer confusion as to the source of the website or the products on it. *Id.* at 698.

Other courts have reached the same result. For instance, in *Gottlieb Development LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625 (S.D.N.Y. 2008), the court examined the use of the plaintiff's mark, as placed on the pinball machine to which the plaintiff owned the copyrights and distributed, in an approximately 3½-minute scene in the defendant's movie, *What Women Want*, starring Mel Gibson.[5] *See id.* at 629-30. The court noted that in the scene in question:

> [I]t would be difficult for even a keen observer to pick out [the plaintiff's] trademark, as it appears in the background of the scene. The trademark is visible at various places on the pinball machine, but it occupies only a minute fraction [of] the frame for three segments lasting approximately three seconds each."

*Id.* at 634-35. On these facts, the court concluded that the plaintiff's "assertion that the appearance of its trademark in the [f]ilm would confuse ordinarily prudent consumers as to the sponsorship or affiliation of its pinball machines is simply not plausible." *Id.* at 635 (citation omitted).

The Complaint here fails to establish plausibly the Defendants' use of Plaintiffs' Mark is anything but a non-trademark use. Indeed, the face of the Complaint alleges that "readers and potential franchisors are confused as to the content and nature of The Sporting Times® publication," not that viewers of *Spaceman* or its trailer would be confused about *The Sporting*

---

[5] That court noted that the plaintiff's theory of harm involved its business reputation, "by any association of its products with the actor Mel Gibson and his purported anti-Semitic beliefs." *Id.* at 635. In a similar vein in the case *sub judice*, Plaintiffs argue that in addition to harm merely by the act of Defendants' alleged infringement, Plaintiffs are further harmed because "The Sporting Times is negatively portrayed as a publication that venerates and promotes over-the-hill athletes with serious addiction problems—the sort of sensationalist story that it would by all means avoid as it is the antithesis of the clean cut girl or boy next door image it actively promotes." (Compl. ¶ 28).

*Times*' sponsorship of the film. (Compl. ¶ 30). Moreover, the contested use of the Mark is on a headline dated July 1976, and Plaintiffs have only applied the Mark to their publications since 2004.[6] (Compl. ¶ 14). Further, the Mark appears as one of a number of news articles and radio soundbites in a brief montage, used in the film "[t]o inform viewers about the arc of Lee's career,"[7] in which Plaintiffs' Mark is only visible for nine seconds in the film and two seconds in the trailer. (Defs.' Mem. 2-3). In addition, nothing about the use of the Mark suggests that this "fictional" magazine, or the real one as published by Plaintiffs, sponsored the film.

Accordingly, Defendants' use of Plaintiffs' Mark constitutes a non-trademark use.[8] It is simply not plausible in the challenged context that viewers would confuse Plaintiffs' Mark as being the "origin" of the film itself. *Big Daddy's*, 109 F.3d at 280. Therefore, Plaintiffs have failed to allege facts supporting their trademark infringement and false designation of origin claims; as such, these claims must be dismissed. *See Mitchell v. Allied Tube & Conduit Corp.*, No. 2:08-CV-0456, 2009 WL 414277, at *4 (S.D. Ohio Feb. 17, 2009) (dismissing claim because plaintiff failed to allege facts sufficient to support an element of the claim).

---

[6] Plaintiffs inquire why Defendants did not "simply pay the publication that ran the photo originally to use their mark instead of ours?" (Pls.' Resp. 9-10). The original photo of Bill Lee throwing a pitch in a spacesuit appeared in the August 7, 1978, issue of *Sports Illustrated* with an article titled "In an Orbit All His Own." Curry Kirkpatrick, *In an Orbit All His Own*, Sports Illustrated Vault, https://www.si.com/vault/1978/08/07/822849/in-an-orbit-all-his-own-bill-lee-the-spaceman-takes-a-different-track-whether-hes-quotretiringquot-from-the-red-sox-lofting-a-leephus-pitch-or-probing-the-wisdom-of-zevon; SI Vault, Aug. 7, 1978, https://www.si.com/vault/issue/70792/58/2. The cover of that issue, bearing the magazine's logo and the date of its issue, was already occupied by another controversial baseball figure: Pete Rose. SI Vault, Aug. 7, 1978, https://www.si.com/vault/issue/70792/1/1.

[7] Other identifiable marks in the montage include real publications like *High Times*, *The Mother Earth News*, and entities like the Associated Press and Topps baseball cards, as well as apparently invented ones like "The Boston Bugle" and "Montreal Nouvelle."

[8] This conclusion is further underscored by the fact that the opening of the film identifies it as "An Orion Pictures Release," followed by graphics for Filmbuff, Podium Pictures, and Rhino Films, and then more than 1½ minutes of the film—including bold credits stating, *inter alia*, "Podium Pictures and Rhino Films present"—before the montage with Plaintiffs' Mark begins.

### b. First Amendment

In addition to their non-trademark use defense discussed above, Defendants further argue that Defendants' use of the Mark in an expressive work, a feature film, is protected by the First Amendment under the test set forth in *Rogers v. Grimaldi*, 875 F.2d 994, 996 (2nd Cir. 1989), which was adopted by the Sixth Circuit in *ETW Corp. v. Jireh Publishing, Inc.*, 332 F.3d 915, 924 (6th Cir. 2003). (Defs.' Mem. 9-18). In *Rogers*, Hollywood star Ginger Rogers brought a Lanham Act claim against the makers of the film *Ginger and Fred* about "two fictional Italian cabaret performers, Pippo and Amelia, who, in their heyday, imitated Rogers and [Fred] Astaire and became known in Italy as 'Ginger and Fred.'" *Rogers*, 875 F.2d at 996-97. The court held that Rogers' Lanham Act claim must be dismissed unless the use of her name "[had] no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless the [use] explicitly misleads as to the source or the content of the work."[9] *Id.* at 999.

### i. Artistic Relevance

The first prong of the *Rogers* test, artistic relevance, "establishes a purposely low threshold which is satisfied unless the use 'has no artistic relevance to the underlying work whatsoever.'" *Fortres Grand Corp. v. Warner Bros. Entm't, Inc.*, 947 F. Supp. 2d 922, 931 (N.D. Ind. 2013) (quoting *Rogers*, 875 F.2d at 999). In *Fortres Grand*, the court found that the defendant satisfied this element, as its use of the plaintiff's mark had artistic reference to the film and websites at issue. The court noted that the plaintiffs' complaint had acknowledged as much, and the same is true here: Plaintiffs' Mark is used in the film and trailer in the context of a

---

[9] While the courts in *Rogers* and *ETW* each considered the use of a celebrity's name or image, the two-pronged *Rogers* test has been utilized more broadly in the trademark context. *See, e.g.*, *Volkswagen AG v. Dorling Kindersley Publ'g, Inc.*, 614 F. Supp. 2d 793, 810 (E.D. Mich. 2009) ("[T]he *Rogers* test is not limited to cases which involve celebrity identity or image." (citation omitted)).

montage featuring "[m]any other publications" as part of the storyline's "venerat[ion of Lee's] enthusiastic additions to drugs and alcohol—hence the name 'Spaceman.'" (Compl. ¶¶ 19, 21-22). Thus, the face of the Complaint describes the artistic connection between their Mark and the story told by Defendants' film.

Defendants argue that the use of the title *The Sporting Times* for a "fictitious sports-themed publication in the film unquestionably exceeds the above-zero artistic relevance threshold." (Defs.' Mem. 15). They note that this name "plainly has relevance to the film's subject matter" and such "artistic relevance explains why the film used an image of the actor as Lee on the cover of *The Sporting Times* in the montage, and not on the cover of *Popular Mechanics* or *Architectural Digest*." (Defs.' Mem. 15). Plaintiffs argue the instant case is more similar to *Parks v. LaFace Records*, 329 F.3d 437, 448 (6th Cir. 2003), in which case the Sixth Circuit found that the district court's grant of summary judgment to the defendants was improper because there was "a genuine issue of material fact whether the use of Rosa Parks' name as a title to the song and on the cover of the album [at issue] is artistically related to the content of the song or whether the use . . . is nothing more than a misleading advertisement for the sale of the song." *Id.* at 458. Plaintiffs further contend that "Defendants seemingly concede that using The Sporting Times® mark has no artistic relevance since they allegedly removed it from the movie's current version"—Defendants state that such removal was undertaken "[a]s a courtesy, and to avoid the burden and expense of meritless litigation" in response to Plaintiffs' letter of September 2016. (Pls.' Resp. 20; Defs.' Mem. 3).

In the context of a scene in the movie featuring a group of news stories about the film's subject, Defendants' use of Plaintiffs' Mark bears at least some artistic relevance to *Spaceman* and its trailer. The movie portrays the story of "Spaceman" Lee and Plaintiffs' Mark is depicted

above a photograph on the mocked-up cover of a publication depicting Lee in his wind-up while wearing a spacesuit. The artistic relevance of the Mark to the plot of the film is beyond cavil. Thus, Defendants use of Plaintiffs' mark passes the first prong of the *Rogers* test.

### ii. Source or Content of the Work

The second prong of the *Rogers* test examines whether Defendants' use "explicitly misleads as to the source or content of the work." *Rogers*, 875 F.2d at 999. Even if the Court agreed with Plaintiffs that members of the public could be misled—or that members of the public *had* been misled—such confusion is not actionable unless there has been an "overt misrepresentation." *ETW*, 332 F.3d at 927; *Rogers*, 875 F.2d at 1000. As discussed above, no suggestion of sponsorship or partnership is inherit in Defendants' use of Plaintiffs' Mark, much less an "overt misrepresentation." As the Sixth Circuit wrote in *ETW*, "[s]peech is protected even though it is carried in a form that is sold for profit." *ETW*, 332 F.3d at 924 (citations omitted). The Court finds that Defendants' use of Plaintiffs' Mark in its film, as an expressive work, is protected by the First Amendment. Defendants having satisfied both prongs of Rogers, their use of the Mark is protected by the First Amendment.

### 2. *Dilution Claim*

In addition to their trademark and false designation of origin claims, Plaintiffs further allege that Defendants' use of their Mark constitutes dilution under the Lanham Act. (Compl ¶ 33). Defendants respond that, because "[t]he federal anti-dilution statute explicitly exempts noncommercial speech," Defendants' use of Plaintiffs' mark does not give rise to a dilution claim. (Defs.' Mem. 18-20).

The Trademark Dilution Revision Act provides, *inter alia*, that "[a]ny noncommercial use of a mark" is not actionable as trademark dilution. 15 U.S.C. § 1125(c)(3). Defendants ask

12

the Court to apply the Ninth Circuit's reasoning from *Mattel, Inc. v. MCA Records*, 296 F.3d 894, 903 (9th Cir. 2002), which found that the Lanham Act only applies to "purely commercial" speech, *i.e.*, that which does no more than propose a commercial transaction, and all speech which is not purely commercial "is entitled to full First Amendment protection." *Mattel*, 296 F.3d at 906 (citation omitted).

As our sister court has explained, the requirement that dilution claims apply to marks used "in commerce" refers to Congress's authority under the Commerce Clause to enact the Lanham Act, whereas the exemption for noncommercial speech is used "as a somewhat inexact, shorthand reference to 'speech protected by the First Amendment.'" *Am. Family Life Ins. Co. v. Hagan*, 266 F. Supp. 2d 682, 694-95 (N.D. Ohio 2002) (citations omitted). The Court agrees with the court in *Hagan*, and finds the noncommercial use exemption reasoning of *Mattel* persuasive. *Id.* at 696-98. Therefore, as the film does more than merely propose a commercial transaction, and as the Court has found above that Defendants' use of the Mark is entitled to First Amendment protection, Plaintiffs' dilution claim is meritless and will be dismissed.

**B.     Commercial Disparagement/Trade Libel**

Plaintiffs' Complaint further includes claims for "commercial disparagement" under the Lanham Act. (Compl. ¶¶ 38-40). To support such a claim, a plaintiff must allege that:

> (1) the defendant has made false or misleading statements of fact concerning his product or another's; (2) the statement actually or tends to deceive a substantial portion of the intended audience; (3) the statement is material in that it will likely influence the deceived consumer's purchasing decisions; (4) the advertisements were interstate commerce; and (5) there is some causal link between the challenged statements and harm to the plaintiff.

*Veracity Grp., Inc. v. Cooper-Atkins Corp., Inc.*, No. 1:11-cv-526, 2012 U.S. Dist. LEXIS 7997, at *20 (S.D. Ohio 2012) (citing *Herman Miller, Inc. v. Palazzetti Imps. & Exps., Inc.*, 270 F.3d 298, 323 (6th Cir. 2001)).

From the face of the Complaint, Plaintiffs have failed to allege plausibly that Defendants made false or misleading statements of fact concerning their product. Merely claiming that, because of Defendants' use of Plaintiffs' Mark in the *Spaceman* trailer, "readers and potential franchisors are confused as to the content and nature of The Sporting Times® publication, which now seemingly sensationalizes and promotes drug and alcohol addiction and has-been middle-aged sports figures in interstate commerce . . . ." provides no more than the most conclusory language as to how the a picture of a professional athlete on an article from decades before Plaintiffs' publication existed somehow impugns their enterprise. (Compl. ¶ 30). Plaintiffs have failed to provide further factual support beyond these conclusory claims, and have therefore failed to meet their burden to state a plausible claim for relief. Accordingly, Plaintiffs' claim of commercial disparagement under the Lanham Act will be dismissed.

C. **State Law Claims**

Finally, Plaintiffs bring related state law claims for "false and misleading advertising and unauthorized commercial use" for Defendants' use of their Mark.[10] (Compl. ¶¶ 35-37). Defendants argue that the same defenses that defeat Plaintiffs' Lanham Act claims also bar their Kentucky-law claims. (Defs.' Mem. 20-21). As discussed above, the First Amendment shields Defendants' use of Plaintiffs' Mark, and state law may not inculpate the same use. *See Louis*

---

[10] Plaintiffs' response apparently attempts to recast this claim by offering a quote from a Kentucky Court of Appeals case discussing the standard for trade libel/disparagement. (Pls.' Resp. 23 (citing *Kenney v. Hanger Prosthetics & Orthotics, Inc.*, 269 S.W.3d 866, 872-43 (Ky. App. 2007))). As the Complaint specifically refers to this claim as "commercial disparagement under both the Lanham Act and state law," and because Plaintiffs have failed to plead facts tending to plausibly establish a "false statement of fact,"—as an element of both trade libel and commercial disparagement—the Court will not permit Plaintiffs to expand their claims via their response. (Compl. ¶¶ 1, 38-40). As a sister recognized, however, Kentucky "common law does not recognize a separate cause of action for 'commercial disparagement.'" *Fieldturf, Inc. v. Sw. Recreational Indus., Inc.*, 235 F. Supp. 2d 708, 734 n.26 (E.D. Ky. 2002), *vacated in part, remanded in part on jurisdictional grounds*, 357 F.3d 1266 (Fed. Cir. 2004).

*Vuitton Mallatier S.A. v. Warner Bros. Entm't Inc.*, 868 F. Supp. 2d 172, 184 (S.D.N.Y. 2012) (holding the plaintiff's "pendant state law claim[s] . . . are likewise dismissed because they are based on the same permissible conduct as its Lanham Act claim." (citations omitted)); *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1101 (9th Cir. 2008) (upholding district court's grant of summary judgment as to all claims, "[s]ince the First Amendment defense applies equally to ESS's state law claims as to its Lanham Act claim . . . ."). Accordingly, the Court will dismiss the state law claims.

## IV.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motions to Dismiss (DN 11, 15) are **GRANTED**, and Plaintiffs' claims are **DISMISSED WITH PREJUDICE**.

**Greg N. Stivers, Judge**
**United States District Court**
December 13, 2017

cc:    counsel of record

15